UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAFAEL ROCHA, | ) | Case No. CV 05-7356-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On October 14, 2005, Rafael Rocha ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for social security disability insurance benefits. On May 23, 2006, defendant filed an Answer to Complaint. On August 18, 2006, the parties filed their Joint Stipulation. Thereafter, on September 11, 2006, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.

The matter is now ready for decision.

///

///

///

**BACKGROUND**

On September 26, 2003, plaintiff filed an application for disability insurance benefits. (Administrative Record ["AR"] at 69-71). In his application, plaintiff claimed that, beginning on August 12, 2003, limitations regarding movement in his shoulder and arm prevented him from working. (AR at 79). The Commissioner denied plaintiff's application for benefits both initially and on review. (AR at 53-58, 60-64). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 65).

On February 7, 2005, the ALJ conducted a hearing in West Los Angeles, California. (AR at 33-52). Plaintiff appeared at the hearing with counsel and testified. (AR at 35-45). Gregory Jones, a vocational expert, also testified. (AR at 45-48). An interpreter was also present. (AR at 33).

On or about April 22, 2005, the ALJ issued her decision denying benefits. (AR at 12-19). In her decision, the ALJ concluded that plaintiff suffered from severe physical impairments of status-post right shoulder arthroscopic surgery and degenerative disc disease of his lumbar spine, but that he did not suffer from any severe mental impairment. (AR at 19). According to the ALJ, however, the severe impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). The ALJ also found that, based upon his residual functional capacity, plaintiff retained the capacity to perform his past relevant work as a grinding and polishing laborer as generally performed in the national economy. (Id.). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On June 20, 2005, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 8). On August 12, 2005, the Appeals Council affirmed the ALJ's decision. (AR at 5-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the parties' Joint Stipulation:

1. The ALJ failed to consider or discuss all the relevant medical evidence.

2. The ALJ improperly rejected the opinions of the treating physicians.

3. The ALJ improperly assessed plaintiff's psychiatric impairment as non-severe.

4. The ALJ failed to consider the combined effect of all of plaintiff's impairments in assessing his residual functional capacity.

5. The ALJ made improper credibility assessments.

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

///

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. Bowen, 482 U.S. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits her physical or mental ability to do basic work activities. Id. at 140-41. Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. Id. at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work she has performed in the past. Id. If the claimant cannot perform her past work, the fifth and final step determines

4

whether she is able to perform other work in the national economy in light of her age, education and work experience. Bowen, 482 U.S. at 142. The claimant is entitled to disability benefits only if she is not able to perform such work. Id.

**B.    Plaintiff's Mental Impairment**

Plaintiff claims that the ALJ erred in finding that plaintiff's mental impairments did not constitute a severe impairment. According to plaintiff, the ALJ ignored the evidence in the record with regard to his mental limitations. Plaintiff further contends that the ALJ failed to articulate clear and convincing reasons for rejecting the opinions of physicians, as well as plaintiff's own testimony, with respect to his mental impairments. As such, plaintiff contends that the ALJ erred.

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions." 20 C.F.R. § 404.1521(b)(3)-(4); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen, 80 F.3d at 1290 (quoting Yuckert, 841 F.2d at 306). The severity inquiry at step two is a de minimus screening device, intended to allow the Commissioner to dispose of groundless claims. Bowen v. Yuckert, 482

U.S. 137, 153 (1987); Smolen, 80 F.3d at 1290.

Here, plaintiff testified that he suffered from depression and stress and received treatment for his mental impairments. (AR at 43-45). On August 23, 2004, L. Carroll, a licensed clinical social worker, completed a mental status examination of plaintiff.[1] (AR at 325-26). Carroll diagnosed plaintiff with depression, not otherwise specified, and assessed him with a Global Assessment of Functioning[2]

---

[1] Generally, a therapist's opinion is not an "acceptable source" of medical evidence unless the social worker acts as an agent of a licensed physician or psychologist. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(a). Thus, in order to qualify as an acceptable source, a social worker must act so "closely under the supervision" of a treating physician that the social worker's opinion should be "properly considered as part of the opinion" of the treating physician. See Gomez, 74 F.3d at 971. In Benton v. Barnhart, the Ninth Circuit found that a report of an interdisciplinary team that contained the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence. See Benton v. Barnhart, 331 F.3d 1030, 1039 (9th Cir. 2003) ("[Dr.] Zwiefach is transmitting both his own knowledge and opinion of Benton and those of the medical treatment team under his supervision . . . nothing in the language of § 404.1502 forecloses his doing so on behalf of his treatment team.").

Here, the record contains facts upon which to assert that Carroll may be an acceptable source of medical evidence. Although the record does not indicate that Carroll actively consulted with any treating physician during the course of plaintiff's treatment, Carroll sent plaintiff to Marc D. Graff, M.D., for a medical evaluation after conducting a mental status evaluation. (AR at 326). Furthermore, the progress notes of Dr. Graff, who constitutes a treating physician under 20 C.F.R. Sections 404.1513 and 416.913, refer to Carroll's evaluation and similarly diagnose plaintiff with major depression. (AR at 327).

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

6

("GAF") score of 64.[3]  (AR at 326).  Carroll further opined that plaintiff experienced problems with orientation, memory and concentration.  (AR at 325).  Additionally, Marc D. Graff, M.D., diagnosed plaintiff with major depression and prescribed Zyprexa,[4] Prozac,[5] and Trazodone,[6] to treat his mental impairments.  (AR at 328-29).  Plaintiff was prescribed Lorazepam[7] and Citalopram.[8]  Finally,

---

[3]  A GAF score between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

[4]  Zyprexa "is used to treat certain mental/mood conditions (schizophrenia, bipolar mania). It works by helping to restore the balance of certain natural chemicals in the brain (neurotransmitters)." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Zyprexa"; follow "Zyprexa Oral" hyperlink; then follow "Uses").

[5]  Prozac is "used to treat depression, obsessive-compulsive disorder, panic attacks, certain eating disorders (bulimia), and a severe form of premenstrual syndrome (premenstrual dysphoric disorder or PMDD)." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Prozac"; follow "Prozac Oral" hyperlink; then follow "Uses").

[6]  Trazodone is used to treat depression. http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Trazodone"; follow "Trazodone Oral" hyperlink; then follow "Uses").

[7]  Lorazepam is used to treat anxiety. http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Lorazepam"; follow "Lorazepam Oral" hyperlink; then follow "Uses").

[8]  Citalopram is "an antidepressant (selective serotonin reuptake inhibitor or SSRI) used in the treatment of depression. It works by restoring the balance of natural chemicals (neurotransmitters) in the brain, thereby improving mood and feelings of well-being." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Citalopram"; then follow "Uses").

7

in a Documentation of Medical Impairment form, plaintiff was diagnosed with "Anxiety/Stress/Phobic Disorders: excludes Post Traumatic Stress" and deemed unable to work for 20 calendar days.[9]  (AR at 332).

In her decision, the ALJ rejected plaintiff's claims of depression.  (AR at 18).  Specifically, the ALJ found that plaintiff's daily activities suggested that he does not suffer from depression and that he "retains at least basic social interest and ability as well as concentration and memory."  (Id.).  The ALJ noted that plaintiff attends to the daily care of his dog and cat, takes walks with his wife and their dog, enjoys watching the news or the Discovery channel on television for two to three hours per day, enjoys listening to the radio on weekends, can recall what he hears and watches, and gets along well with his family, friends, and co-workers.  (AR at 17-18).  The Court, however, is not persuaded that plaintiff's ability to perform certain daily activities necessarily renders his depression non-severe.[10]  Plaintiff's ability to care for his pets, take walks, watch television, and perform other chores does not necessarily

---

[9] In the Joint Stipulation, plaintiff states that the Documentation of Medical Impairment form indicated that plaintiff be homebound for 30 days, but the Court reads the form as stating 20 days.

[10] "With respect to daily activities, this court has held that if a claimant 'is able to spend a substantial part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'"  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (emphasis in original) (citing Morgan, 169 F.3d at 600); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  In Fair, however, the Ninth Circuit cautioned that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  Fair, 885 F.2d at 603.

8

1  contradict the assessments that he may be restricted in terms of work-
2  related activities.  Most significantly, the fact that plaintiff was
3  diagnosed with depression and prescribed multiple medications for his
4  mental impairments are sufficient to meet the <u>de minimus</u> standard that
5  must be applied to the Step Two severity inquiry.  <u>See</u> <u>Bowen</u>, 482 U.S.
6  at 153; <u>Smolen</u>, 80 F.3d at 1290.

7  **C.   <u>Reversal and Remand is Appropriate</u>**

8       The choice whether to reverse and remand for further
9  administrative proceedings, or to reverse and simply award benefits,
10 is within the discretion of the Court.  <u>McAlister v. Sullivan</u>, 888
11 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional
12 proceedings would remedy defects in the ALJ's decision, and where the
13 record should be developed more fully.  <u>Id</u>; <u>see</u> <u>also</u> <u>Rodriguez v.</u>
14 <u>Bowen</u>, 876 F.2d 759, 763 (9th Cir. 1989); <u>Marcia v. Sullivan</u>, 900 F.2d
15 172, 176 (9th Cir. 1990).  An award of benefits is appropriate where
16 no useful purpose would be served by further administrative
17 proceedings, <u>see</u> <u>Gamble v. Chater</u>, 68 F.3d 319, 322-23 (9th Cir.
18 1995), where the record has been fully developed, <u>see</u> <u>Schneider v.</u>
19 <u>Commissioner of the Social Security Administration</u>, 223 F.3d 968, 976
20 (9th Cir. 2000); <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1455 (9th Cir.
21 1993), or where remand would unnecessarily delay the receipt of
22 benefits.  <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996).
23 In this case, the Court finds remand appropriate.  On remand, the ALJ
24 should consider whether, in light of plaintiff's severe mental
25 impairment, the impairments meet or equal a listed impairment.  The
26 ALJ must then determine whether the impairments prevent plaintiff from
27 performing work he has performed in the past.  If plaintiff cannot
28 perform his past work, the ALJ must again determine whether he is able

to perform other work in the national economy in light of his age, education, and work experience.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: October 25, 2006

JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE